OPINION OF THE COURT
Bernard J. Malone, Jr., J.
The motion of the plaintiff for an order pursuant to Executive Law § 632-a (6) granting it an injunction restraining the defendant and the New York State Department of Correctional Services and its employees, agents or assignees from in any way disbursing, distributing, encumbering or assigning any and all funds deposited with any Superintendent of the New York State Department of Correctional Services pursuant to Correction Law § 116 and credited to the inmate account of Abdul Majid, 83-A-0483, except those sums which constitute child support and earned income or are exempted from enforcement or execution upon any anticipated judgments in favor of defendant’s crime victims or their representatives pursuant to CPLR 5205 (k) until such time as the lawsuits against Mr. Majid brought by Officer Richard Rainey and the family of Officer John Scarangella are finally determined is granted. The affirmative defenses asserted by the defendant are converted by the court (CPLR 103) to counterclaims for a declaratory judgment asking this court to determine that Executive Law § 632-a (6) is unconstitutional, and the plaintiff is awarded judgment declaring that the issuance of an injunction pursuant to Executive Law § 632-a (6) restraining the funds in the account of an inmate until the final determination of tort actions brought against the inmate by his victims does not violate the Ex Post Facto Clause of the Federal Constitution or the Due Process and Equal Protection Clauses of the State and Federal Constitutions. The motion of the defendant for an order compelling the issuance of a subpoena directing the Department of Correctional Services to produce him for oral argument of the plaintiffs motion is denied.
Executive Law § 632-a is commonly referred to as the “Son of Sam” Law and is designed to provide remedies for crime victims against their assailants. The statute was amended in June of 2001 to expand the remedies of crime victims by allowing them to sue a convicted criminal within three years after learning that the inmate has received funds in excess of $10,000 from any source other than earned income or child support. The amendment permits the victim to collect a judg *712 ment against an inmate by garnishing any award the inmate may win in a civil lawsuit up to 90% of compensatory damages (less counsel fees) and 100% of punitive damages (CPLR 5205 [k]). The Crime Victims Board (board) has certain responsibilities under the statute, including the power under section 632-a (6) to seek the provisional remedies of attachment, injunction, receivership and notice of pendency in order to preserve the assets of the criminal upon learning that a victim or a representative of a victim intends to commence a civil suit against the criminal. This action and motion by the board seek the provisional remedies of injunction or attachment against the inmate account of the defendant.
In June 1986, the defendant was convicted of murder in the second degree for killing Police Officer John G. Scarangella, a member of the New York City Police Department, and attempting to murder Police Officer Richard Rainey. The defendant is in the custody of the New York State Department of Correctional Services, serving a sentence of SSVs years to life. On April 2, 2002, the board received notice that the New York State Comptroller was about to pay $15,061.64 into the inmate account of the defendant. The board received notice that Officer Rainey and the widow of Officer Scarangella intend to bring civil suits against the defendant and they asked the board to seek provisional remedies to keep the defendant from dissipating the funds prior to the resolution of their lawsuits. This litigation followed.
In his answer the defendant asserts, without specifying in what manner, that the Son of Sam Law violates the Ex Post Facto Clause of the Federal Constitution and the Due Process and Equal Protection Clauses of the State and Federal Constitutions. Anticipating that the defendant’s challenges are to the statute of limitations aspects of subdivision (3) of section 632-a,[1] the Attorney General has directed his response to the inmate’s defenses to contending that the statute of limitations set forth in subdivision (3) is constitutional. In this court’s view, those issues are not ripe for determination in this litigation. The proposed lawsuits by the defendant’s victims have not yet been commenced to the knowledge of this court, and even if commenced, are not assigned to this Justice. Whether the defendant will raise constitutional challenges to *713 the statute of limitations set forth in subdivision (3) of section 632-a in the lawsuits brought by his victims is conjecture and the rule of law is well settled that courts should not decide constitutional challenges which are not yet ripe for disposition (People ex rel. Johnson v Russi, 258 AD2d 346).
Other issues that the parties have placed before the court are whether subdivision (6) of section 632-a violates the Ex Post Facto, Due Process or Equal Protection Clauses. The Double Jeopardy Clause of the Fifth Amendment of the Federal Constitution prohibits the State Legislature from retroactively changing the definition of a crime and imposing a new punishment making the inquiry for the court reviewing an Ex Post Facto Clause challenge to a statute to be whether the legislation under review is punitive (Matter of M.G. v Travis, 236 AD2d 163). If the statute simply creates a civil remedy and not criminal punishment there is no ex post facto violation (Seling v Young, 531 US 250). Subdivision (6) of section 632-a of the Executive Law does not even create a civil remedy, much less a criminal punishment. All it does is authorize the board to apply to a court for the already existing civil remedies of attachment, injunction, receivership and notice of pendency. Clearly, there is no Ex Post Facto Clause violation in legislation authorizing a governmental entity to seek already existing civil remedies, and this defense alleged by the defendant is also rejected.
Turning to the defendant’s procedural due process claim, procedural due process requires that before property or liberty interests protected by the Fourteenth Amendment of the United States Constitution can be taken away the affected person must be given notice and an opportunity to be heard, although a short delay such as five days in taking ex parte action before notice is given does not violate procedural due process (Matter of Medicon Diagnostic Labs. v Perales, 74 NY2d 539). Here, the order to show cause bringing on the board’s application for provisional relief was executed on April 24, 2002 and served upon the defendant on April 30, 2002. The defendant has vigorously opposed the application to restrain the funds in his inmate account. Clearly, the defendant had both notice[2] and the opportunity to be heard before injunctive relief was granted and therefore there has been no procedural due process violation.
*714 As to the substantive due process argument, the applicable law is stated by the Third Department in the case of Matter of Mallinckrodt Med. v Assessor of Town of Argyle (292 AD2d 721, 723) as follows:
“In essence, the doctrine of substantive due process prevents the deprivation of life, liberty or property for arbitrary reasons. The challenged statute is not arbitrary if there is a reasonable connection between it and the promotion of the health, comfort, safety and welfare of society (see, Health Ins. Assn. of Am. v Harnett, 44 NY2d 302, 310). When attacked, not only is the legislation presumed to be constitutional, but it is also presumed that the Legislature investigated and found the existence of a situation which warranted remedial action (see, Montgomery v Daniels, 38 NY2d 41, 54).”
In reviewing a prior version of New York’s Son of Sam Law, the United States Supreme Court stated in Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd. (502 US 105, 118) that:
“There can be little doubt, on the other hand, that the State has a compelling interest in ensuring that victims of crime are compensated by those who harm them. Every State has a body of tort law serving exactly this interest. The State’s interest in preventing wrongdoers from dissipating their assets before victims can recover explains the existence of the State’s statutory provisions for prejudgment remedies and orders of restitution.”
Clearly, there is a reasonable connection between this subdivision permitting the board to apply for provisional remedies and New York’s “compelling interest in ensuring that victims of crime are compensated by those who harm them.” In this court’s view, there is nothing arbitrary about subdivision (6) of section 632-a of the Executive Law. The defendant has failed to establish a substantive due process violation.
To establish a breach of the Equal Protection Clauses of the New York State or United States Constitutions, the party asserting the violation must show that for no reasonable purpose he or she is being treated differently than others who are similarly situated (Matter of Gray v Town of Oppenheim, 289 AD2d 743). The Executive Law section challenged by the defendant simply authorizes the board to apply for provisional remedies. The need for and the parameters of that grant of power is that the board was created by the Legislature and has *715 only the powers that the Legislature gave it. Articles 62 through 65 of the CPLR authorize any litigant to apply to the court for an injunction, receiver, or order of attachment and to file a notice of pendency. The defendant is also free to request any of those remedies and, thus, has the same rights that the board acquired by subdivision (6) of section 632-a of the Executive Law. Since the plaintiff and the defendant have the same rights with respect to applying for those provisional remedies, there is no equal protection violation.
Addressing the merits, to obtain an injunction the moving party must show a likelihood of success on the merits, irreparable injury and that the equities favor injunctive relief (Picotte Realty v Gallery of Homes, 66 AD2d 978). While ordinarily injunctive relief to preserve the assets of a potential judgment debtor is not available in an action for money damages only, if the action is directed to a specific fund which can be regarded as the “subject of the action” injunctive relief can issue (see, Credit Agricole Indosuez v Rossiyskiy Kredit Bank, 94 NY2d 541, 547, 548). This appears to be precisely such a situation, as the accounts of criminals which are the subject of the Son of Sam statute are considered to be different from the general assets of the ordinary defendant in a civil case (see generally, Barrett v Wojtowicz, 66 AD2d 604). The court finds that the victims of defendant’s crimes and the citizens of this state will be irreparably damaged if the defendant is allowed to spend the funds in his inmate account before a court can determine whether he is required to pay that money over to his victims.
Finally, upon the papers submitted by defendant there are absolutely no equities flowing in favor of the defendant.
Regarding the defendant’s motion for oral argument, motions in this Third Judicial District are decided upon submission of papers unless the assigned justice orders oral argument. Since anything said during the course of oral argument would not be either evidence or a part of the record on appeal, this court does not have the need for causing the taxpayers to bear the expense of the State of New York transporting defendant in custody to and from Stormville, New York, to appear before this court for unnecessary oral argument.

. Subdivision (3) extends to crime victims a three-year statute of limitations measured from the discovery that the defendant is about to receive funds from any source. The subdivision extends no powers or duties to the board.

. Under the Medicon Labs. case, the five days that the temporary restraining notice was in effect before the order to show cause was served upon the defendant is not a violation of the Due Process Clauses of the New York State or United States Constitutions.