OPINION OF THE COURT
Mercure, J.
In this appeal, we must decide whether Retirement and Social Security Law § 110 protects state pensions from the broad reach of the Son of Sam Law, which does not expressly exempt pension funds. We hold that public pensions are not exempt from the statute’s reach.
Respondent, Steven C. Raucci, was sentenced in June 2010 to a lengthy prison term upon his conviction of numerous crimes, *237 including arson in the first degree and criminal possession of a weapon in the first degree, arising out of his alleged detonation and attempted detonation of explosive devices at two of his victims’ homes. After receiving notice from these two victims of their intent to commence civil actions against respondent for money damages, petitioner commenced this proceeding on their behalf pursuant to the Son of Sam Law (see Executive Law § 632-a). Petitioner asserts that on June 1, 2010, respondent began receiving pension checks from the New York State and Local Employees’ Retirement System in the amount of approximately $5,800 per month, which are delivered to his wife, Shelley Raucci. Respondent gave Shelley Raucci a power of attorney that enables her to cash his monthly pension checks, thereby giving her control over the funds and threatening their disbursement in a manner that would render ineffectual any civil judgments obtained by the crime victims.
By order to show cause, petitioner moved for a preliminary injunction deeming respondent to have directed the Retirement System to forward his pension funds to his inmate account, and prohibiting the withdrawal or transfer of those funds. Respondent and Shelley Raucci, as an interested person, asserted in opposition that Retirement and Social Security Law § 110 exempts the pension funds from garnishment or any other legal process. Supreme Court agreed and denied petitioner’s motion, prompting this appeal.
We now reverse. Retirement and Social Security Law § 110 protects public employee pensions, providing that “[t]he right of a person to a pension ... or a retirement allowance, ... to the return of . . . the pension ... or retirement allowance itself . . . and the monies in [those] funds . . . [s]hall not be subject to execution, garnishment, attachment, or any other process whatsoever, and . . . [s]hall be unassignable.” As Supreme Court noted, the Court of Appeals indicated in Board of Educ. of City of N.Y. v Treyball (63 NY2d 980 [1984]), in dicta, that section 110 shields a retirement allowance from creditors both while the funds are in the possession and control of the Retirement System and after disbursement to retirees (id. at 982). Treyball, however, predated the 2001 amendments to the Son of Sam Law that are at issue here and is not relevant to the interplay between those amendments and Retirement and Social Security Law § 110 (see Gold v United Health Servs. Hosps., 261 AD2d 67, 72 n 5 [1999], mod on other grounds 95 NY2d 683 [2001]), which is the precise question presented on this appeal.
*238 Supreme Court did not address that question because it found that petitioner failed to advance any argument that the Son of Sam Law, as amended, supersedes Retirement and Social Security Law § 110. The record reflects, however, that the issue was raised in the submissions before the court. Although petitioner did not specifically assert that the Son of Sam Law supersedes section 110, it did argue before Supreme Court that the exemptions listed in Executive Law § 632-a are the only categories of funds excluded from the statute’s reach and that section 110 does not act as a bar to recovery here. In reply, Shelley Raucci expressly argued that the Son of Sam Law does not supersede Retirement and Social Security Law § 110. Thus, the issue was squarely presented to Supreme Court and thereby sufficiently preserved for appellate review (see Geraci v Probst, 15 NY3d 336, 342 [2010]).
Turning to the merits, we note that, prior to its amendment in 2001, the Son of Sam Law permitted victims to recover only “[p]rofits from [a] crime,” i.e., property or income generated from the crime itself (Executive Law former § 632-a [1] [b]; see Governor’s Approval Mem, Bill Jacket, L 2001, ch 62, at 2, 2001 McKinney’s Session Laws of NY, at 1226; Senate Mem in Support of L 2001, ch 62, reprinted in 2001 McKinney’s Session Laws of NY, at 1312). Determining that shortcomings in the statute had prevented crime victims from obtaining “full and just compensation for their injuries and other expenses” resulting from criminal acts, the Legislature “expand[ed] the [Son of Sam] [L]aw to cover money and property that a convicted criminal receives from any source” (Senate Mem in Support of L 2001, ch 62, reprinted in 2001 McKinney’s Session Laws of NY, at 1309, 1312). The current version of the statute thus permits crime victims to commence an action “within three years of the discovery of any profits from a crime or funds of a convicted person” (Executive Law § 632-a [3] [emphasis added]), broadly defined as “all funds and property received from any source by a person convicted of a specified crime” (Executive Law § 632-a [1] [c] [emphasis added]; see Matter of New York State Crime Victims Bd. v Harris, 68 AD3d 1269, 1270-1271 [2009]).
Only two categories of a convicted person’s funds are not recoverable by crime victims: the first $1,000 in the convicted person’s account and the first 10% of compensatory damages obtained by the convicted person in a civil judgment, less *239 counsel fees (see Executive Law § 632-a [3]; CPLR 5205 [k]).[1] The rationale for the latter exclusion was that “convicted criminals who are themselves victims of tortious or wrongful acts should not be denied incentives to seek redress in the courts” (Governor’s Approval Mem, Bill Jacket, L 2001, ch 62, at 4, 2001 McKinney’s Session Laws of NY, at 1228; see Senate Mem in Support of L 2001, ch 62, reprinted in 2001 McKinney’s Session Laws of NY, at 1312; see also Matter of New York State Crime Victims Bd. v Gordon, 66 AD3d 1213, 1214-1215 [2009]). Apart from those exceptions, however, the amendments to the Son of Sam Law were intended to ensure that convicted criminals are “held accountable to their victims financially, regardless of their source of wealth” (Senate Mem in Support of L 2001, ch 62, reprinted in 2001 McKinney’s Session Laws of NY, at 1312 [emphasis added]). In our view, both the unambiguous statutory language of the Son of Sam Law and the legislative history of the 2001 amendments support petitioner’s argument that respondent’s pension funds are not exempt from the statute’s reach.
Indeed, given that “the Legislature went to great lengths to provide avenues to allow crime victims to be compensated for their losses” (Matter of New York State Crime Victims Bd. v Harris, 68 AD3d at 1271), the absence of any exception in the statute for public employee pensions evinces the Legislature’s intent to supersede the bar in Retirement and Social Security Law § 110. As a general principle of statutory construction, “ ‘[t]he failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended’ ” (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 285 [1997], quoting Pajak v Pajak, 56 NY2d 394, 397 [1982]; see McKinney’s Cons Laws of NY, Book 1, Statutes § 74). Although the Legislature expressly exempted certain categories of funds from the reach of the Son of Sam Law, it did not list pension proceeds as one of those categories, indicating that such funds were intended to be recoverable. Moreover, the older, more general provisions of Retirement and *240 Social Security Law § 110 are subordinate to the more recent and specific dictates of the Son of Sam Law because “a prior general statute yields to a later specific or special statute” (Matter of Dutchess County Dept. of Social Servs. v Day, 96 NY2d 149, 153 [2001] [internal quotations marks and citations omitted]; see New York State Crime Victims Bd. v Wendell, 12 Misc 3d 801, 806 [2006]).[2]
We note that, despite the absolute ban on assignment contained in statutes protecting public employee pensions, the “courts have long recognized . . . limited exception[s] to the unyielding application” of such laws for purposes of support obligations and equitable distribution (Kaplan v Kaplan, 82 NY2d 300, 306 [1993]), reasoning that a rule “[e]quating the rights of the spouse and dependents with those of any other creditor for purposes of applying the anti-assignment rule is no longer justified” (id. at 305; see McDermott v McDermott, 119 AD2d 370, 377 [1986], appeal dismissed 69 NY2d 1028 [1987]). Similarly here, “a crime victim does not stand in the same shoes as a potential ordinary creditor” (Matter of New York State Crime Victims Bd. v Harris, 68 AD3d at 1271). Yet the interpretation of the statutes at issue that respondent and Shelley Raucci advanced — and Supreme Court adopted — would necessarily treat crime victims the same as any other creditor with respect to garnishment of convicted criminals’ public pensions. That interpretation therefore directly thwarts the Legislature’s stated intent of holding convicted criminals financially accountable regardless of their source of wealth. Further, the construction of the statute advanced by respondent and Shelley Raucci would perpetuate the very injustice that the statute sought to eliminate in attempting to ensure that “[c]rime victims and their families . . . will never again fear that they can only watch helplessly while convicted criminals freely spend their” income *241 (Governor’s Approval Mem, Bill Jacket, L 2001, ch 62, at 4, 2001 McKinney’s Session Laws of NY, at 1229), a result that is untenable.
Accordingly, inasmuch as petitioner satisfied the requirements for obtaining a preliminary injunction (see CPLR 6311, 6312) and that remedy is expressly authorized by the Son of Sam Law (see Executive Law § 632-a [6]), the requested relief should be granted (see Matter of New York State Crime Victims Bd. v Sookoo, 77 AD3d 1227, 1228 [2010], supra; Matter of New York State Crime Victims Bd. v Harris, 68 AD3d at 1272).
Peters, EJ., Rose, Lahtinen and Egan Jr., JJ, concur.
Ordered that the order is reversed, on the law, without costs, motion granted, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision.

. The definition of “[flunds of a convicted person” also excludes child support and earned income for the purpose of determining whether payors of funds must comply with notification requirements (Executive Law § 632-a [1] [c]; see Matter of New York State Crime Victims Bd. v Sookoo, 77 AD3d 1227, 1227 [2010]; Governor’s Approval Mem, Bill Jacket, L 2001, ch 62, at 3, 2001 McKinney’s Session Laws of NY, at 1227-1228). Failure to comply with notification requirements regarding payment of funds to convicted criminals may result in substantial civil penalties (Executive Law § 632-a [7]).

. The fact that the Legislature amended other statutes, such as the Court of Claims Act and the State Finance Law, when it enacted the 2001 amendments (see L 2001, ch 62), but did not amend Retirement and Social Security Law § 110 does not establish that it did not intend to supersede section 110, as Shelley Raucci asserts. We note that many of the amendments to other statutes involve adding new notice provisions, which trigger significant sanctions, or increasing specific statutes of limitations (see L 2001, ch 62). The only-amendment of another statute involving the funds recoverable by a crime victim is that adding CPLR 5205 (k), which relates to one of the express exemptions to the Son of Sam Law — that involving the first 10% of a compensatory judgment; had the Legislature intended public pensions to be exempt or partially exempt, it presumably would have amended Retirement and Social Security Law § 110, as well.